## MOSS *v.* THE STATE.

1. The theory of mutual combat was presented by the evidence, and a charge thereon was not inappropriate.
2. An instruction to the jury that "there is nothing in this case that you are to consider in arriving at a verdict, except the law and the evidence and the statement of the defendant," is not too restrictive in scope, when from the context it is apparent that the court only intended an admonition that the jury were not to be influenced by matters extraneous to the trial.

Argued October 15,—Decided November 7, 1906.

Indictment for murder. Before Judge Martin. Pulaski superior court. June 21, 1906.

*Fort & Grice,* for plaintiff in error.

*E. D. Graham, solicitor-general,* contra.

EVANS, J. Hardy Moss, Carroll Daniel, Monroe Smith, and Grant Smith were jointly indicted for the murder of Will Gilbert; the defendants severed on the trial, and the jury returned a verdict

of guilty, with a recommendation to life imprisonment in the penitentiary, against Hardy Moss. He moved for a new trial, which being refused, he sued out a bill of exceptions complaining of the overruling of his motion.

1. Several of the grounds of the motion complain that the court erred in charging the principle stated in the Penal Code, § 73: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given;" because there was no evidence of mutual combat or mutual intention to fight. Looking at the evidence from the standpoint of this criticism, we find these facts testified to: There was a "frolic" at the house of one Hudson. During the festivities the deceased struck a woman over the head with a pistol. From this assault considerable confusion resulted, during which the codefendants of the accused were cursing and quarreling with the deceased. One witness was positive that the accused was in the house at this time. One of the guests took hold of the deceased and carried him out of the house, closely followed by all of the defendants. When they had proceeded about thirty-five yards from the house, the deceased asked Grant Smith, "What have I done to you boys?" and Grant replied, "You aint the only damn man here." Several words passed between the accused and Grant Smith, the purport of which is not narrated. At this point the accused ran to the house and quickly returned with his gun. Just as he rejoined the others, Grant Smith fired his pistol at the deceased, who fired at Grant Smith; then the accused fired at the deceased with a gun, inflicting the mortal wound. Afterwards the other defendants fired at the deceased with pistols, and the deceased also fired again. It also appeared that when the accused ran for his gun and was returning to the place of the homicide, the accused said, with an oath, that "he would kill him," evidently referring to the deceased. The defendant in his statement said that on the day of the homicide he had purchased the gun which he had with him. "When I first got to the frolic I went in the house and stayed a few minutes and come out on the porch and set down. A few minutes before I

went back in the house they got to rowing. I picked up my gun and put it under my arm and started home, not having any words with them. When I got up the path going on home, Will walked up. When he got right against me he said: 'I will kill everyone of you God damn sons of bitches!' and Will shot Grant and put into shooting at the crowd and shot this hole through my coat. I just raised my gun and shot him. I didn't intend to kill him, because I was not mad with him at all." The codefendants of the accused testified in his behalf that the accused shot first.

When it is considered that all of the defendants were armed; that some of them had a quarrel in the house with the accused, and when the accused was being taken away by a peacemaker all of them closely followed; that the altercation of words was continued on the outside of the house, pending which the accused quickly armed himself and returned to the scene before the shooting began; that the deceased was armed also; that the accused asserted that the deceased threatened the whole crowd before shooting, we think it was proper to charge on the law of mutual combat.

2. The court charged as follows: "Gentlemen of the jury, there is nothing in this case that you are to consider in arriving at a verdict, except the law and the evidence and the statement of the defendant." It is complained that this charge excluded from the consideration of the jury the argument of counsel, the number of witnesses, their manner of testifying, and their interest or want of interest in the case. We do not think this charge so restrictive in its scope as is contended in the assignment of error. When considered in connection with its place in the general charge, it is apparent that this instruction was but an admonition to the jury not to be affected by any extraneous influence.

The evidence warranted the verdict and we see no reason for ordering a new trial.

*Judgment affirmed. All the Justices concur.*